IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ANDRE DANSBY, #181727, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 2:14-CV-70-WHA |
| | ) [WO] |
| | ) |
| CAPTAIN BABERS, et al., | ) |
| | ) |
| Defendants. | ) |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I. INTRODUCTION**

This case is before the court on a 42 U.S.C. § 1983 complaint filed by Andre Dansby ("Dansby") in which he challenges the constitutionality of his classification level. Specifically, Dansby maintains that correctional officials improperly used his assault on another inmate, behavior which resulted in his being found guilty of a disciplinary infraction, as the basis for their decision to place him in close custody.[1] Dansby alleges that the

---

[1] Throughout the complaint, Dansby characterizes the disciplinary for assault on another inmate as an "expired" disciplinary. It appears that this characterization arises from the fact that the disciplinary charge was not served on Dansby within ten working days of the assault made the basis of the charge, one potential time period for service referenced in the administrative regulation governing disciplinary procedures. *See Administrative Regulation No. 403 § 5(A)(1)(b)(1-3)*. The other relevant time for service permitted by the administrative regulation allows service within ten working days of the completion of any investigation into the assault. *Id*. Although Dansby makes the conclusory allegation that the disciplinary had "expired" at the time of his reclassification, it is clear that the disciplinary remained in effect at that time and, as discussed *infra* pp. 9-12, did not deprive Dansby of due process. In addition, the record indicates that the disciplinary could have been served on Dansby within ten working days of the completion of an investigation into the assault thereby rendering the disciplinary timely served in accordance with the applicable administrative regulation. More importantly, Dansby does not dispute the fact that he assaulted inmate Christopher Abrams on July 24, 2013 by striking Abrams "several times while he was sleep[ing]" which resulted in Abrams "receiv[ing] 16 sutures to the facial area [and] the back of [his] head[,]" *Defendants' Exhibit E - Doc. No. 12-5* at 18, the underlying basis for the actions challenged in this case.

defendants deprived him of due process and his Sixth Amendment right of confrontation during the disciplinary and classification procedures. *Complaint - Doc. No. 1* at 2-3. Dansby further alleges that the increase in his custody status and the loss of privileges resulting from the disciplinary action subjected him to cruel and unusual punishment. *Id*. at 3. Dansby names Capt. Babers, Lt. Lockley, Lt. Scott, Ms. King and Lt. Ruffin, all correctional officials employed at Bullock Correctional Facility ("Bullock"), as defendants in this cause of action. Dansby seeks a declaratory judgment, transfer to another medium security facility and monetary damages for the alleged violations of his constitutional rights. *Id*. at 4.

The defendants filed an answer, special report, supplemental special report and relevant supporting evidentiary materials, including affidavits, the disciplinary report and classification records, addressing Dansby's claims for relief. The court thereafter informed Dansby that the defendants' special reports may, at a future time, be treated as a motion for summary judgment and explained to Dansby the proper manner in which to respond to a motion for summary judgment. *Order of April 21, 2014 - Doc. No. 15*. Dansby, however, filed no response to this order. Pursuant to the aforementioned order, the court deems it appropriate to treat the defendants' reports as a motion for summary judgment. Thus, this case is now pending on the defendants' motion for summary judgment. Upon consideration of this motion and the evidentiary materials filed in support thereof, the court concludes that the defendants' motion for summary judgment is due to be granted.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[2] The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-324.

The defendants have met their evidentiary burden and demonstrated the absence of

---

[2] Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed.R.Civ.P. 56 Advisory Committee Notes. Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.' 'Dispute' better reflects the focus of a summary-judgment determination." *Id*. "'Shall' is also restored to express the direction to grant summary judgment." *Id*. Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, all cases citing prior versions of the rule remain equally applicable to the current rule.

any genuine dispute of material fact. Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may ... grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it.") A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263.

> In civil actions filed by inmates, federal courts
> 
> must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted). Consequently, to survive the defendants' properly supported motion for summary judgment, Dansby is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims of constitutional violations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*. "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not

significantly probative ... summary judgment may be granted." *Id*. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."); *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries,*

5

*Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.

*Celotex*, 477 U.S. at 323-324 (summary judgment appropriate where pleadings, evidentiary materials and affidavits before the court show no genuine dispute as to a requisite material fact); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (to establish a genuine dispute of material fact, nonmoving party must produce evidence such that reasonable trier of fact could return a verdict in his favor).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, Dansby fails to demonstrate a genuine dispute of material fact in order to preclude summary judgment. *Matsushita*, *supra*.

### III.  DISCUSSION

### A.  Absolute Immunity

With respect to any claims Dansby lodges against the defendants in their official capacities, they are entitled to absolute immunity from monetary damages. Official capacity lawsuits are "in all respects other than name, ... treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). "A state official may not be sued in his [or her] official capacity unless the state has waived its Eleventh Amendment immunity, *see*

*Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984), or Congress has abrogated the state's immunity, *see Seminole Tribe v. Florida*, [517 U.S. 44, 59], 116 S.Ct. 1114, 1125, 134 L.Ed.2d 252 (1996). Alabama has not waived its Eleventh Amendment immunity, *see Carr v. City of Florence*, 916 F.2d 1521, 1525 (11th Cir. 1990) (citations omitted), and Congress has not abrogated Alabama's immunity. Therefore, Alabama state officials are immune from claims brought against them in their official capacities." *Lancaster v. Monroe County*, 116 F.3d 1419, 1429 (11th Cir. 1997).

In light of the foregoing, the defendants are state actors entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities. *Lancaster*, 116 F.3d at 1429; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994); *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989).

### B.  Relevant Facts

On July 24, 2013, inmate Christopher Abrams was attacked by another inmate causing him to suffer severe head injuries. After the attack, inmate Abrams identified Dansby to Officer Chermane Baskin as the inmate who attacked him. *Defendants' Exhibit E - Doc. No. 12-5 at 13.* Based on Abrams' statement and after an internal investigation of the incident, Officer Baskin charged Dansby with a violation of Rule #906, assault on an inmate. *Id.* On August 22, 2013, Officer Willie Williams served Dansby with notice of the disciplinary

8

charge and the scheduled date for the disciplinary hearing related to this charge. *Id*. Dansby refused to sign for receipt of the disciplinary and did not identify any witnesses for the hearing. *Id.* Upon completion of the noticed disciplinary hearing, during which Dansby had an opportunity to present evidence and question the witness against him, the hearing officer, Eric Williams, found Dansby guilty of the charged offense. *Id*. at 14. The sanctions imposed upon Dansby for this disciplinary infraction consisted of the loss of canteen, telephone and visitation privileges for sixty days and placement in segregation for forty-five days. *Id*.

On September 10, 2013, correctional officials provided Dansby "Notice of Pending Reclassification" advising Dansby that he would be considered for a change in his custody classification due to his assault on inmate Abrams. *Defendants' Exhibit E - Doc. No. 12-5* at 18. A reclassification hearing was conducted on September 17, 2013. At this hearing, Dansby had the opportunity to address the behavior made the basis of his reclassification, i.e., the assault on inmate Abrams. Dansby, however, refused this opportunity and advised that he had "no questions" and was "ready to go." *Id*. at 17. Subsequently, the classification team at Bullock recommended that Dansby be reclassified from medium custody to close custody due to his assault on inmate Abrams and this recommendation was accepted by the Central Review Board resulting in Dansby's reclassification to close custody. *Id*. at 15.

Dansby contends that the disciplinary and reclassification proceedings deprived him of due process and the right to confront the witness against him in violation of his Sixth Amendment right. *Complaint - Doc. No. 1* at 2-3. Dansby further alleges that the actions

9

made the basis of the instant complaint constituted cruel and unusual punishment. *Id*. at 3.

## C. Due Process

**1. Disciplinary Proceeding.** The punishments imposed upon Dansby for the challenged disciplinary infraction were sixty days loss of store, telephone and visitation privileges and confinement in disciplinary segregation for forty-five days. *Defendants' Exhibit E - Doc. No. 12-5* at 14. Under the circumstances of this case, Dansby's due process claim entitles him to no relief.

The Supreme Court has identified two circumstances in which a prisoner, an individual already deprived of his liberty in the ordinary sense, can be further deprived of his liberty such that due process is required. "The first is when a change in a prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court. *See Sandin v. Conner,* 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995); *see, e.g., Vitek v. Jones,* 445 U.S. 480, 492-93, 100 S.Ct. 1254, 1263-64, 63 L.Ed.2d 552 (1980) (holding that a prisoner is entitled to due process prior to being transferred to a mental hospital). The second is when the state has consistently given a certain benefit to prisoners (for instance, via statute or administrative policy), and the deprivation of that benefit 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' *Sandin,* 515 U.S. at 484, 115 S.Ct. at 2300; *see, e.g., Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974) (prisoners may not be deprived of statutory 'good-time credits' without due process); *cf. Dudley v. Stewart,*


724 F.2d 1493, 1497-98 (11th Cir.1984) (explaining how the state creates liberty interests). In the first situation, the liberty interest exists apart from the state; in the second situation, the liberty interest is created by the state." *Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999).

The Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement. *Sandin*, 515 U.S. at 485-486 (disciplinary confinement of inmate in segregation does not implicate a constitutionally protected liberty interest); *Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005) ("The punishments [inmate] suffered because of his disciplinary conviction (demotion in status, segregation, and transfer) raise no due process concerns."); *see also Meachum v. Fano,* 427 U.S. 215, 225 (1976) (No liberty interest arising from Due Process Clause itself in transfer from low-to maximum-security prison because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose."); *Olim v. Wakinekona*, 461 U.S. 238, 245-246 (1983) (prisoner has no constitutional right to be confined in a particular institution). Moreover, an inmate in the Alabama prison system has no constitutionally protected interest in the privileges bestowed upon him or confinement in the least restrictive prison environment because the resulting restraints are not so severe that they exceed the sentence imposed upon him. *Sandin*, 515 U.S. at 485 ("Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law."). In addition, a temporary denial of privileges does

not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. Thus, the deprivations imposed upon Dansby based on the challenged disciplinary did not "exceed the sentence [imposed by the trial court] in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force." *Id*. This court must therefore determine whether the actions about which Dansby complains involved the deprivation of a state-created liberty interest as defined by the standard set forth in *Sandin*.

As the Supreme Court opined,

> *Sandin* involved prisoners' claims to procedural due process protection before placement in segregated confinement for 30 days, imposed as discipline for disruptive behavior. *Sandin* observed that some of our earlier cases, *Hewitt v. Helms,* 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), in particular, had employed a methodology for identifying state-created liberty interests that emphasized "the language of a particular [prison] regulation" instead of "the nature of the deprivation." *Sandin,* 515 U.S., at 481, 115 S.Ct. 2293. In *Sandin,* we criticized this methodology as creating a disincentive for States to promulgate procedures for prison management, and as involving the federal courts in the day-to-day management of prisons. *Id.,* at 482-483, 115 S.Ct. 2293. For these reasons, we abrogated the methodology of parsing the language of particular regulations.
> "[T]he search for a negative implication from mandatory language in prisoner regulations has strayed from the real concerns undergirding the liberty protected by the Due Process Clause. The time has come to return to the due process principles we believe were correctly established in and applied in *Wolff* and *Meachum.* Following *Wolff,* we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.,* at 483-484, 115 S.Ct.

2293 (citations and footnote omitted).

After *Sandin,* it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature of those conditions themselves "in relation to the ordinary incidents of prison life." *Id.,* at 484, 115 S.Ct. 2293.

*Wilkinson v. Austin*, 545 U.S. 209, 222-223, 125 S.Ct. 2384, 2393-2394 (2005).

Applying the *Sandin* inquiry, the court concludes that the temporary loss of canteen, telephone and visitation privileges and short-term confinement in segregation "though concededly punitive, do[] not represent a dramatic departure from the basic conditions" of the sentence imposed upon the plaintiff. *Id*. at 485. In light of the foregoing, it is clear that the aforementioned sanctions fail to "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484. Consequently, the plaintiff's due process claim fails under the law as established in *Sandin*.[3]

---

[3] Even assuming a right to due process in the challenged disciplinary proceeding, the alleged failure to serve the disciplinary charge on Dansby within 10 working days of either discovery of the violation or completion of any necessary investigation as required by the applicable administrative regulation did not violate this right. "By itself ... the failure to comply with the regulation does not amount to a violation of constitutional magnitude. Prison disciplinary proceedings such as this have never been considered part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply. *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974). The requirements of due process do not impose such a [10-day] rule. *Carlisle v. Bensinger*, 355 F.Supp. 1359, 1362 (N.D. Ill. 1974). In this case, there is no evidence that the administrative action taken against [Dansby] did not fairly and rationally satisfy the concept of due process. *See Edwards v. Ill. Dept. of Corrections*, 514 F.2d 477, 479 (7th Cir. 1975); *Adams v. Pate*, 445 F.2d 105, 108 (7th Cir. 1971). The alleged failure of the prison authorities to comply with the [10-day] rule ... does not by itself amount to a constitutional violation." *Caruth v. Pinkey*, 683 F.2d 1044, 1052 (7th Cir. 1982); *Magluta v. Samples*, 375 F.3d 1269, 1279 n. 7 (11th Cir. 2004) (mere fact governmental agency's regulations or procedures may have been violated does not, alone, raise a constitutional issue); *Myers v. Klevenhagen,* 97 F.3d 91, 94 (5th Cir. 1996) (claim that prison officials have not followed their own policies and procedures does not, without more, amount to a constitutional violation); *United States v. Caceres,* 440 U.S. 741, 751-752 (1979) (mere violations of agency regulations do not raise constitutional questions); *Weatherholt v. Bradley,* 316 Fed.Appx. 300, 303 (4th Cir. 2009) (same); *see also Riccio v. Cnty. of Fairfax,* 907 F.2d 1459, 1459 (4th Cir. 1990) (holding that if state law grants more procedural rights than the constitution requires, a state's failure to abide by its law is not a federal violation). Moreover, the undisputed evidentiary materials before the court demonstrate that in each proceeding Dansby was provided notice of the charge against him and an opportunity to be heard, present witnesses and submit documentary evidence. These

**2. Classification Process**.  To the extent Dansby challenges his reclassification to a more secure custody level based on his assaultive behavior, he is entitled to no relief.  An inmate confined in the Alabama prison system has no constitutionally protected interest in the procedure affecting his classification level because the resulting restraint, without more, does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin*, 515 U.S. at 484.  Because Dansby has no constitutionally protected interest in the level of his custody classification, correctional officials may assign him to any classification level without implicating the protections of due process.  Summary judgment is therefore due to be granted in favor of the defendants on this claim.

### D.  Sixth Amendment Right of Confrontation

Dansby makes the conclusory allegation that correctional officials violated his right to confront a witness as guaranteed by the Sixth Amendment.  The Confrontation Clause of the Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him."  "The Sixth Amendment right to confront one's accusers is available only in criminal trials.  'Prison disciplinary [and classification] proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply.'  *Wolff v. McDonnell,* 418 U.S.

---

materials also establish that the decisions issued by correctional officials were based on Dansby's undisputed assault of another inmate.  In light of the foregoing, it is apparent that the plaintiff's allegations fail to establish that he was deprived the minimum due process required by *Wolff* and therefore do not state a due process claim.

539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); *Taylor v. Wallace,* 931 F.2d 698, 701 (10th Cir.1991) ('*Wolff* does not require the confrontation and cross-examination of witnesses in prison disciplinary proceedings.')." *Kucera v. Terrell*, 214 Fed. App'x 729, 730 (10th Cir. 2006); *Henderson v. United States Parole Comm'n*, 13 F.3d 1073, 1078 (7th Cir.), *cert. denied* 513 U.S. 926 (1994) ("[A] prison disciplinary proceeding is not a criminal prosecution. Prisoners in this context do not possess Sixth Amendment rights to confront and cross-examine witnesses."). It is therefore clear that no violation of the Sixth Amendment occurred as "the Sixth Amendment does not guarantee prisoners the right to confront their accusers in a disciplinary [or reclassification] hearing." *Kucera*, 214 Fed.Appx. at 730.

### E. Cruel and Unusual Punishment

With respect to Dansby's allegation that the actions of the defendants subjected him to cruel and unusual punishment, this claim is likewise without merit as the Eighth Amendment proscribes only those actions which deprive an inmate of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *see also Wilson v. Seiter*, 501 U.S. 294 (1991). "'[T]he Constitution does not mandate comfortable prisons.' *Id.* at 349, 101 S.Ct. at 2400. If prison conditions are merely 'restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society.' *Id.* at 347, 101 S.Ct. at 2399. Generally speaking, prison conditions rise to the level of an Eighth Amendment violation only when they 'involve the wanton and unnecessary infliction of pain.' *Id.*" *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004). Neither

the initiation of disciplinary action against Dansby for assault and the punishments imposed upon him after the determination of guilt nor his reclassification to a higher custody level constitute sufficiently grave deprivations so as to deprive Dansby of a right protected by the Eighth Amendment.

### IV.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The defendants' motion for summary judgment be GRANTED.

2. Judgment be GRANTED in favor of the defendants.

3. This case be DISMISSED with prejudice.

4. Costs be taxed against the plaintiff.

It is further

 ORDERED that **on or before January 26, 2015**, the parties may file objections to this Recommendation.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the

District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  See also *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, en banc), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 12th day of January, 2015.

                                            /s/Charles S. Coody
                                      CHARLES S. COODY
                                      UNITED STATES MAGISTRATE JUDGE